BRETT and others, Adm'rs, etc., *v.* QUINTARD, Adm'r, etc.

*(Circuit Court, D. Connecticut.* February 16, 1882.)

1. PATENTS—OPERATION OF DEVICES.

Where the plan of operation in two sets of devices, intended to produce the same result, is radically different, the one is not an infringement on the other.

2. SAME—METHODS SIMILAR—INFRINGEMENT.

Where the method pursued by a subsequent invention is substantially the same as that under a prior invention, it is an infringement.

In Equity.

*E. N. Dickerson,* for plaintiffs.

*John H. Perry* and *Henry T. Blake,* for defendant.

SHIPMAN, D. J. This is a bill in equity, originally in favor of Eliza Wells, as administratrix of the estate of Henry A. Wells, to restrain Elbridge Brown from the infringement by the use of the "Gill machine" of reissued letters patent of May 19, 1868, No. 2,942, for "improvements in machinery for making hat bodies of fur," commonly known as the "hat-body patent." Since the commencement of the suit the plaintiff and defendant have both died. The present plaintiffs are the administratrix and the administrator of the estate of Henry A. Wells. The defendant is the administrator of the estate of Elbridge Brown. Under the decree as directed to be modified, and the pleadings in the case as directed to be amended, the hearing was confined to the question of the infringement by the defendant's intestate of the fifth and sixth claims of reissue No. 2,942. I assume that the plaintiffs proved the uses of the Gill machine by the defendant's intestate.

The state of the art relating to the manufacture of hat bodies of fur, the characteristics of the Wells invention, the original Wells patent and its reissues, the first four claims of the last reissue, the mode of construction of his machine, and the general appearance and

the different parts of the Gill machine, are described either in *Burr* v. *Duryea*, 1 Wall. 531, or in *Gill* v. *Wells*, 22 Wall. 1.

The manufacture of hat bodies by the deposition of fur thrown from a picker upon an exhausted revolving cone was old at the date of the Wells invention. It is said in *Burr* v. *Duryea* that—

"The aim and object of both Wells and Boyden was to construct an automatic machine which would distribute the fur on the cones so that the bat might be thicker in certain portions than on others. This was the defect of former machines, which each proposed to remedy. * * * The great and peculiar characteristic of the Wells invention is a tunnel or chamber constructed as described. Instead of the picker, he used a rotating brush to distribute the fur from the feed-aprons, and throw it forward into the chamber which conducted it to the cones. The hinged hood and flap were devices to distribute the material in unequal quantities, to accomplish the object of making the bat thicker in one part than another."

The chamber or tunnel is, as is said by the patentee in his original patent, "gradually changed in form towards the outlet, where it assumes a shape nearly corresponding to a verticle section passing through the axis of the cone, but narrower, for the purpose of concentrating and directing the fur thrown by the brush onto the cone." The cone is in front of the delivery aperture of the chamber.

The fifth and sixth claims of reissue No. 2,942 are as follows:

"(5) The combination of the feed-apron, on which the fur fibers can be placed in separate batches, each in quantity sufficient to make one hat body; the rotating brush or picker, substantially as described; the rotating previous cone, provided with an exhausting mechanism; and the device for guiding the fur fibers, substantially as described; the combination having the mode of operation specified, and for the purpose set forth. (6) In combination with a previous cone, provided with an exhausting mechanism, substantially as described, the covering cloth wet with hot water, substantially as and for the purpose specified."

The fifth claim was for the combination of the feed-apron, rotating brush or picker, rotating previous cone, provided with an exhausting mechanism, and the trunk or tunnel with its hinged hood and flap, made substantially as described. It implies that the sides of the trunk are to be united at their edges, and that the trunk is a unit and not a collection of separate devices; but the mere fact that the sides were taken apart would not defeat the charge of infringement.

The engraving on page 11 of 22 Wall. shows the Gill machine, except that the deflectors which it is said regulate the deposit of fur upon the band of the hat are not shown. These deflectors consist of blocks of wood fastened to the interior wall of the Gill case near the bottom, the

upper end of the blocks being inwardly and downwardly inclined, and forming, in the language of the plaintiffs' expert, "an annular deflector which surrounds the cone at a prescribed distance from its base."

In considering the question of infringement of the fifth claim, first, upon the theory that the different guiding devices of the Gill machine are the four sides of the Wells trunk, when taken apart, it cannot be denied that the various parts of the Gill mechanism perform the office of guiding the fur into the case to a point or points where it can be influenced by the exhaust mechanism, and that the deflectors of the Gill machine perform the office of concentrating the fur upon the different parts of the cone where it is desired that the thicker portions of the bat shall be deposited; and it may also be conceded that the extensible plate of the Gill machine, which receives the fur from the rotating brush, performs the office of the top plate of the Wells trunk with its hood, and in substantially the same way.

The plaintiffs insist that the annular ledges near the bottom of the Gill case are the equivalent of the hinges upon the end of the bottom plate of the Wells machine. This similarity relates only to the end of the bottom plate. It is not claimed that the Gill machine has that portion of the bottom plate of the Wells machine which is between the picker and the hinged flap.

It is next claimed that the side guides of the two machines are the same. The side pieces of the Wells trunk converge as they approach the cone both horizontally and vertically, and guide the fur in a direction towards the side of the cone; and it is admitted that this convergence may be essential in the form in which the Wells machine is organized, as shown in the patent. But it is claimed that the side guides of the Gill machine are connected with the top of the case, and that the case, with its converging walls, forms a continuation of these guides down to the annular deflector inside of the case, and that the Gill case is in one respect a "tunnel" which confines the fur-bearing current and prevents the lateral escape of the fur from the influence of the exhaust current, and, in that respect, performs, as to the vertical downward current of fur, the function which the side guides in the Wells machine peform as to the horizontal current of fur in that machine.

The decisions of the supreme court in regard to the Wells invention and reissue restrict the invention, as secured by the patent, within narrow limits, as compared with those which were placed upon the patent at the earlier trials. Bearing in mind the limita-

tions which were put upon the reissue by the supreme court, and that the characteristic of the invention is the trunk, with its hood and flap, constructed substantially as shown in the drawings, I am of opinion that the attempt to make the side boards of the Gill trough, and the walls of the Gill case, to be substantially the same thing with the side pieces of the Wells trunk, cannot be successful. In view of these limitations, the aid of fancy is now required to convert the annular ledges upon the lower part of the Gill case into the hinged flap of the Wells trunk. This equivalence cannot be found, except upon the view which is stated by the plaintiffs' expert to be the one which he entertains, and which is that the end of the lower plate, in the Wells machine, "is present in any machine where there is a guide so related to the cone, and to the devices by which the fur-bearing currents are set in motion, that it governs the quantity of fur supplied to the lower part of the side of the cone, and acts in conjunction with a non-fur-bearing current which is admitted to the perforations at the base of the cone."

Neither are the trough and the walls of the hopper, and the ledges at the bottom of the wall, taken together, the equivalent of the trunk of the Wells patent. It is true that each structure accomplishes the same result, of conveying fur to the cone so as to make a graduated hat body; 'but the two conduits are not constructed in the same way. The plan of operation in these two sets of devices is not the same. In the Wells machine all the sides of the trunk co-operate with each other to confine the fur-bearing current, to guide it in a horizontal direction towards the vertical section of the cone, and to deliver it in a shape which conforms to that of such section. In the Gill machine the bottom plate and the side guides guide the stream of fur to the upper part of a case or hopper of large dimensions, as compared with the cone, and then, the course of the fur being changed by the powerful exhaust current, it falls upon all sides of the cone, which is placed at the bottom of the hopper. There is a guiding and directing operation by the plates and deflectors of each machine; but the Wells machine guides directly to the cone, while in the Gill machine the current of fur is conveyed in a trough, open at the top, to the upper part of a hopper, and thence restrained and deflected by the converging walls of the hopper, it is drawn to the cone by the exhaust. These differences are not merely formal, but make two radically different vehicles for the transmission of fur, and the reason for this dissimilarity of construction is because the respective methods by which the fur is driven to the cone are not

alike. In each machine the blast and exhaust currents co-operate. It is impossible for me to say, in view of the history of the litigation in regard to these two machines, that the blast current in the Gill machine does not aid the exhaust current in directing the fibers to the cone. But I am of opinion that after the fur is blown into the hopper the influence of the exhaust current in directing the fur to the cone is the predominant influence, and this difference in the mode of operation of the two machines compels a difference of construction.

Upon the question of the infringement of the sixth claim there was naturally a disagreement between counsel upon the question whether the case was to be entirely retried. The counsel for the plaintiff, supposing that the uses and the manner of use of the wet cloth by the defendant's intestate had been sufficiently proved before Judge Woodruff, made no formal proof of the manner in which the bat was taken from the cone, but simply introduced expert testimony that such use was an infringement. I shall assume that the method of removing the bat from the cone, which is described by Prof. Trowbridge, the defendant's expert, on page 7 of the printed testimony, was the method pursued by the defendant's intestate. If so, there was an infringement of the sixth claim. If the defendant asserts that this was not the method which was practiced, he will be at liberty, upon verified petition, to open the case and introduce proofs to that effect.

Let there be a decree for the plaintiffs for an accounting in respect to the sixth claim.