AMERICAN STEEL & WIRE CO. OF NEW JERSEY v. DENNING WIRE & FENCE CO.

(Circuit Court, N. D. Iowa, Cedar Rapids Division. January 11, 1910.)

No. 46.

1. PATENTS (§ 234*)—INFRINGEMENT—MACHINE PATENT.

To constitute infringement of a patent for a machine the infringing machine must be substantially identical with that of the patent in the result attained, the means of obtaining that result, and the manner in which its different mechanisms operate and co-operate to produce that result.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 370; Dec. Dig. § 234.*]

2. PATENTS (§ 235*)—INFRINGEMENTS—MACHINES—INTERMITTENT AND CONTINUOUS OPERATION.

Machines or devices in which the different parts are arranged and constructed to operate continuously are different in principle from those in which the parts are arranged to operate intermittently and alternately with each other, and one is not an infringement of the other.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 371; Dec. Dig. § 235.*]

3. PATENTS (§ 328*)—INFRINGEMENT—WIRE FENCE MACHINES.

The Bates patent, No. 577,639, for a machine for making wire fence, construed, and held not infringed.

4. WORDS AND PHRASES—"CUT."

The word "cut" most usually signifies to make an incision with a sharp instrument; to cut or sever by the application of a sharp knife or edged instrument of some kind.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1807–1809.]

In Equity. Suit by the American Steel & Wire Company of New Jersey against the Denning Wire & Fence Company. On motion for preliminary injunction. Motion denied.

Clarence P. Byrnes and Charles C. Linthicum (J. H. Preston and Charles MacVeagh, on the brief), for complainant.

Thos. A. Banning, for defendant.

REED, District Judge. Bill for an alleged infringement by defendant of claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 19, 27, and 35 of letters patent

No. 577,639, issued by the United States to Albert J. Bates February 23, 1897, and now owned by the complainant. Preliminary and permanent injunctions are prayed restraining defendant from further infringing said claims. The defendant denies the alleged infringement, and resists the granting of a preliminary injunction. The single question for determination is, Has the defendant infringed complainant's patent?

The patent is for a combination of four groups of mechanisms into a machine for making woven wire fence fabric. It was adjudged valid by a decree of this court in March, 1908 (160 Fed. 108), in a suit between these same parties, and the defendant restrained from further infringing the claims above mentioned and claim 5. The decree was affirmed by the Court of Appeals in April, 1909. 169 Fed. 793. Since the former suit was commenced the defendant has made, and authorized to be made, four kinds of machines, other than the two involved in that suit, with which it makes and authorizes others to make a woven wire fence fabric substantially the same as that made by the complainant's machine; two of which are made under letters patent of the United States No. 816,538 issued to Joseph M. Denning, president of the defendant company, March 27, 1906; one under letters patent No. 923,778, issued to said Denning June 1, 1909; and one upon which there is no patent. It is the use of these machines with which to make such wire fence fabric, and the sale of them to others for that purpose, that complainant now seeks to enjoin as an infringement of its patent. The two machines involved in the former suit are referred to in the preliminary proofs upon this hearing as machines Nos. 1 and 2, and those involved in this suit as Nos. 3, 4, 5, and 6. Models of the latter named machines are in evidence and numbered accordingly. To sustain the charge of infringement of a patented machine the infringing machine must be substantially identical with the one alleged to be infringed in (1) the result attained; (2) the means of obtaining that result; and (3) the manner in which its different mechanisms operate and co-operate to produce that result. If the machines are substantially different in either of these respects, the charge of infringement is not sustained. Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Gill v. Wells, 22 Wall. 1–14, 22 L. Ed. 699; Fuller v. Yentzer, 94 U. S. 288–296, 24 L. Ed. 103; Fay v. Cordesman, 109 U. S. 408, 3 Sup. Ct. 236, 27 L. Ed. 979; Rowell v. Lindsay, 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906; Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 23 C. C. A. 223; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 45 C. C. A. 544.

In Machine Co. v. Murphy, above, it is said:

"In determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or difference by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result. * * * It is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained."

The complainant's patent being for a combination only, it must be limited to the parts specified, or to their mechanical equivalents, and there is no infringement of it unless the combination is infringed, even though the same ingredients are used, if arranged and used in a substantially different manner.

In Rowell v. Lindsay above, it is said, quoting from Prouty v. Ruggles, 16 Pet. 336–341, 10 L. Ed. 985:

"This combination composed of all of the parts mentioned in the specification, and arranged with reference to each other and to other parts of the plow in the manner therein described, is said to be the improvement and is the thing patented. The use of any two of these parts only, or two combined with a third which is substantially different, in form or in the manner of its arrangement and connection with the others, is therefore not the thing patented. It is not the same combination if it substantially differs from it in any of its parts."

In Gill v. Wells, 22 Wall. 1–14, 22 L. Ed. 699, above, it is said:

"Valid letters patent may be granted for * * * a new combination of old ingredients, * * * but the rule is equally well settled, in such a case, that the invention consists merely in the new combination of the ingredients, and that a suit for an infringement cannot be maintained against a party who constructs or uses a substantially different combination, even though it includes the exact same ingredients."

In the light of these principles the defendant's machines may be compared with that of complainant's patent. In defendant's machines Nos. 1 and 2 involved in the former suit, the combination was the same, and the different parts composing it were arranged to operate intermittently and alternately, substantially as claimed and as described in the specifications and drawings of the complainant's or Bates patent. Claim 1 of the Bates patent specifies the mechanism combined, and for which the patent is claimed. It is as follows:

"(1) In a wire fence machine the combination of (1) mechanism for intermittently feeding a plurality of longitudinal strand wires, (2) mechanism for intermittently feeding a plurality of stay wires simultaneously and transversely of the strand wires, (3) mechanism for cutting off suitable lengths of the stay wires to span the space between the strand wires, and (4) mechanism for simultaneously coiling the adjacent ends of the stay wires around the strand wires."

Claims 2, 3, 4, and 6 are for the same combination, and are substantially the same, but claim 6 adds thereto "mechanism for taking up the fencing as it is formed." It is plain that the design of this combination is that two at least of its parts are to act simultaneously, but alternately with the others, or, as it is expressed in the claims, "intermittently." For instance, the specifications of the patent and a model of the machine show that the mechanism for feeding the strand and stay wires into the machine so feed them simultaneously, the stay wires transversely of and in close relation with the strand wires, while the mechanism for cutting and coiling the stay wires are inactive or at rest. When the wires are so fed into their proper position the feed mechanisms stop and become inactive; the cutting device then comes into action, cuts stay wire sections of the requisite lengths from the stay strand, while it and the strand wires are at rest; the coiling mechanism, which up to this time has been at rest, then comes into

action, seizes the ends of the stay wire sections and coils and intercoils them around the strand wires simultaneously and stops, thus completing the fence fabric. The stay wire sections are then released from their confinement, the cutting and coiling mechanisms assume a position of rest or inactivity, and the completed fence fabric is carried forward by the take-up mechanism; the wire feeding mechanisms then come into action again simultaneously and the operation is repeated. This is the principle upon which the machine as a whole is constructed, and every element of the combination is arranged to so act alternately with each other and can only effectively so act, for if the wire feed mechanisms should be called into action at the same time the other mechanisms are the operation of the machine would be wholly ineffective for the purpose for which it is constructed. Defendant's machines Nos. 3 and 4, also spoken of in the preliminary proofs as the Colorado and the Cedar Rapids machines respectively, are substantially alike, and are made according to the Denning patent, No. 816,538, and are presumptively not infringements of the complainant's machine. Claim 3 of this patent sufficiently shows the combination, the different elements included therein, and in a general way the principle upon which the machine is organized. It is as follows:

"In a wire fence machine the combination of (1) mechanism for continuously feeding forward a plurality of strand wires. (2) mechanism for continuously feeding forward a plurality of stay wires, (3) mechanism for severing the advance portion of each stay wire to form a section of a transverse stay wire across the plurality of strand wires. (4) mechanism for carrying forward and delivering the stay wire sections into position for coiling their ends around the strand wires. and (5) a reciprocating mechanism for coiling the ends of the stay wire sections around each other and then around the strand wires as the strand wires are fed forward. substantially as described."

The features of this claim which distinguish the operation of the defendant's machines from that of the complainant's patent are that each of its parts operate continuously and simultaneously. For instance, the specifications of the patent and a model of the machine show that the strand and stay wires are fed forward into the machine simultaneously and continuously, but at some distance from, and transversely to, each other; the stay wire sections are then cut the requisite lengths and pushed into contact with the strand wires, when their ends are then engaged by the coiler shafts, which move upon and in line with the strand wires, and coiled around the strand wires, thus completing the fence fabric as the strand and stay wires are carried forward from the machine; the coiler shafts then recede from the stay wires, move back upon the strand wires to meet the oncoming stay wires and repeat the operation. The principle upon which the Bates machine is constructed, therefore, is that its component parts shall operate intermittently and alternately with each other; while that of defendant's machines Nos. 3 and 4 is that their component parts shall operate continuously and simultaneously. Machines or devices in which the different parts are arranged and constructed to operate continuously, are different in principle from those in which the parts are arranged and constructed to operate intermittently and alternately with each other, and one is not an infringement of the other. Dryfoos v. Wiese (C. C.) 19 Fed. 315, affirmed 124 U. S. 32, 8 Sup. Ct. 354,

31 L. Ed. 362. To avoid the effect of this difference in the operation of the Bates and defendant's machine counsel for complainant contend that, while the defendant's machines operate continuously, the stay wires are in fact at rest relatively to the strand wires while the coiling operation is in progress; the contention being that when sections of stay wires are cut from the spool of continuous stay wire and pushed directly into contact with the strand wires to be finally attached thereto, they are then at rest with reference to the strand wires while the coiling operation is in progress, and, therefore, that the coilers operate intermittently only, relative to the stay wire sections; also, that while the coilers are returning upon and along the strand wires to engage the ends of the oncoming stay wire sections, they are then at rest relatively to both the strand and stay wires, and though continuously in motion they operate intermittently only relatively to them. The contention is ingenious and plausible, but it fails to distinguish between the movement of the stay wire sections after being cut from the spool of stay wire, and the operation of the stay wire feed mechanism by which the stay wire is continuously fed into the machine. The language of the claims of the Bates patent is (2) "mechanism for intermittently feeding a plurality of stay wires simultaneously and transversely of the strand wires," while that of the defendant's patent is, "mechanism for continuously feeding forward a plurality of stay wires." That this mechanism does continuously feed forward the stay wires from which stay sections of the requisite length are cut in the continuous operation of the machine is obvious. It would be more nearly correct to say that the coiling mechanism of the defendant's machines 3 and 4 only acts intermittently with the stay wire feed mechanism and cutting mechanism because it does not commence to perform its function until the feed mechanism and the cutting mechanism has each fully performed its function with reference to the stay wire sections and they have been delivered to the coilers. But though this be true there can be no doubt that in these machines the wire feeding mechanism of both the strand and stay wires and the coiling and cutting devices are each in continuous and simultaneous operation while the machine is in motion, and this continuous operation of the coilers is essential to enable them to fully perform their functions, and is an essential element of the organization of the machines. In the Bates machines, and the Denning machines Nos. 3 and 4, the strand wires are fed through openings in the center of the coiler shafts, but in the former the coilers have but one movement, and that a rotary one upon the strand wire while the feed mechanisms of both wires are at rest. In the latter the coilers have this same rotary movement, also a reciprocating movement upon, and in a direct line with, the strand wires. This second or reciprocating movement is wholly absent in the coilers of the Bates machine and cannot be imparted to them without rearranging and rebuilding the machine upon a different principle. But in the Denning machines this movement is an essential element of their organization and cannot be eliminated therefrom without rearranging and reconstructing the machines upon a different principle. The coiling mechanisms of the two machines as constructed are not therefore interchangeable. So in the Denning

machines the cutting mechanism consists of a fixed or stationary cutter bar or plate with an aperture therein through which the stay wires are fed, and a companion cutter mounted upon the periphery of a continuously revolving disk, the cutters being so adjusted to each other and the stay wires that a section of stay wire is cut the requisite length, as it is projected through the opening in the fixed cutter, at each revolution of the disk. But the movement of the disk upon which the cutter blade is mounted is circular and continuous, while the movement of the cutter bar of the Bates patent is in a direct line reciprocating, and intermittent. The result attained by each is identical, viz., the cutting of the stay wires into sections of the requisite length, but this result is attained in a substantially different manner. Claim 7 of the Bates patent is as follows:

"In a wire fence machine the combination of (1) a plurality of coilers through which longitudinal strand wires are fed; (2) a plurality of guides through which stay wires are fed transversely to the coilers; (3) mechanism for cutting off suitable lengths of stay wires to span the spaces between the strand wires: and (4) mechanism for holding the stay wires intermediate of the coilers while their ends are being coiled around the strand wires."

This claim and claims 8, 9, 10, 19, 27, and 35 relate to the same subject-matter, and in different ways call for a plurality of coilers, through which the strand wires are fed, in combination with a plurality of guides through which stay wires are fed transversely to the strand wires, and with mechanism for cutting the stay wires into the requisite lengths, and with mechanism for holding them in position intermediate the coilers while their ends are being coiled and intercoiled around the strand wires. Claim 11 is for a combination of mechanism for rotating the coilers in one direction only, with mechanism for locking them against rotating during the intermission of the coiler-rotating mechanism. It is not urged that this claim is infringed by any device of defendant's machines, nor could it well be, for there is no intermission between the coiler-rotating, or reciprocating, movement of the coilers in those machines. Parts of some of these claims, notably 8, 9, 19, 27, and perhaps 35, may describe the functions of certain of the ingredients included in the combination; but this does not invalidate the claims for the combination of the different elements into a single machine, which is the thing invented, and for which the patent is claimed, or, as said in the opinion of the former suit, "the patent is for a machine endowed with certain functions, and not for the functions of a machine."

It is the contention of the defendant that there are no guides between the coilers in defendant's machines Nos. 3 and 4, and that this element is wholly omitted from these machines. Literally this may be true, for the stay wires in these machines are not fed directly from one coiler to another as in the Bates machine, but are projected across the intervening space between the strand wires at one side of, and a short distance from, the coilers, and after being cut the requisite lengths are then pushed transversely towards and in contact with the strand wires to be acted upon by the coilers. There are, however, between the strand wires and at one side of the coilers, plates, in which are shallow uncovered grooves or passageways that act as guides for

the stay wires across the intervening spaces between the strand wires, and fingers that hold the stays in position while their ends are being coiled around the strand wires, which it is contended by counsel for complainant are the mechanical equivalents of the spring-hinged plates that perform the same function in the Bates machine. But the difference in, the construction of these two devices is so marked, and the manner in which each operates is so unlike, that one cannot properly be regarded as the mechanical equivalent of the other.

In defendant's machine No. 5, also called the "Hopper Machine," upon which there is no patent, there is no mechanism for cutting the stay wire into sections, and this element of the Bates combination is wholly omitted. In lieu of it are hoppers, from which the machine takes its name, into which the requisite stay sections are deposited and from which they are fed directly into position transverse to the strand wires ready for the coilers to act upon. The stay sections are previously prepared outside 'of, and apart from, the machine, and placed in the hoppers by some means other than by the machine itself. It is perfectly obvious that this mechanism and its mode of operation are wholly unlike any element of the Bates machine, and yet it is claimed to be the mechanical equivalent of the Bates cutting mechanism and operates in substantially the same way. The preliminary proofs show that defendant cuts stay wire sections of the requisite lengths with an ordinary wire cutting machine in no way connected with its fence machine, and then by means other than the fence machine transfers them to and deposits them in these hoppers. While this machine contains in equivalent form (1) mechanism for simultaneously feeding a plurality of longitudinal strand wires, and (4) mechanism for simultaneously coiling the adjacent ends of the stay wires around the strand wires, as called for in the first and other claims of the Bates patent, its similarity to the Bates machine ends there, for obviously it does not have in equivalent form or otherwise any (3) "mechanism for cutting off suitable lengths of stay wires to span the spaces between the strand wires," for it has no cutting device whatever. Nor has it any (2) "mechanism for intermittently feeding a plurality of stay wires simultaneously and transversely to the strand wires," within the meaning of the specifications and claims of the Bates patent, for the hopper device of this machine is intended only to hold and distribute stay wire sections, previously prepared and placed therein, into position for coiling, while the stay wire mechanism of the Bates patent is intended to intermittently feed the uncut or continuous stay wire from the spool into the machine where it may be cut into stay wire sections of the required length immediately preceding the coiling, by the cutting device, which is. entirely absent in this machine. As well might it be claimed that the separate cutting machine used by the defendant is the equivalent of the Bates cutting mechanism; or if the defendant should arrange with the wire factory to furnish it stay wire sections of the requisite sizes and lengths, that the mechanism of the factory for cutting and preparing such stay sections, and the means by which they were delivered to the defendant and placed in these hoppers were together the mechanical equivalents of the cutting and stay wire feed mechanism of the Bates patent.

In Fay v. Cordesman, 109 U. S. 408–420, 3 Sup. Ct. 236, 244 (27 L. Ed. 979), it is said:

"The claims of the patents sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

But it is urged with apparent sincerity, and some of complainant's experts say, that the hoppers are the mechanical equivalent of the mechanism of the Bates patent "for cutting off suitable lengths of stay wires to span the space between the strand wires." The word "cut" is doubtless used in different senses, but its meaning in a given association with other words must be determined from its connection and association with such other words. A common, and perhaps its most usual, significance is: "To make an incision with a sharp instrument; to cut or sever by the application of a sharp knife or edged instrument of some kind." Century Dictionary. To interpret it as it is used in the Bates patent, as synonymous with separate, divide, set apart, or segregate would obviously not be the sense in which it is used in that patent. The specifications and drawings of the patent, as well as a model of the machine prepared by the complainant, show beyond any doubt that the stay wire sections are to be cut from spools of continuous stay wire by knives or cutter blades passing each other in close relation, substantially as the blades of shears pass each other, and the word "cut," as used in the patent, is undoubtedly intended to convey that meaning. The conclusion is therefore unavoidable that the cutting mechanism of the Bates machine is wholly omitted from defendant's machine No. 5, and that it contains no substitute therefor which is its mechanical equivalent.

Defendant's machine No. 6, also called the "Automatic Hand" machine, is made according to the Denning patent, No. 923,778, in which the claim for transferring the stay wire sections into a position transverse to the strand wires and ready for the coilers is as follows:

"(5) In a wire fence machine, the combination of (1) a plurality of coilers, and (2) a plurality of swinging and oscillating stay section carriers adapted to clamp stay sections and convey the severed sections bodily through the air and deliver them to the coilers in position for coiling, substantially as described."

A model of these swinging carriers, spoken of in the preliminary proofs as an "automatic hand," in association with the coilers and wire feed mechanisms, show that the stay wires are continuously fed into the machine simultaneously with, and parallel to, the strand wires, but at some distance from them and from the coilers, and after being cut the requisite length, are immediately clamped, or seized by the carriers, which are located between the strand and stay wires, and carried by a swinging or elbow-like movement, through the arc of a circle and while being so carried are turned by an oscillating or wrist-like

movement of the device from their position parallel to the strand wires to one transverse, or crosswise to them and placed upon the coilers in proper position for coiling. These carriers and their mode of operation are so unlike the tubes of the Bates machine for guiding the stay wires from their position parallel with the strand wires to one transversely of them and in position for coiling that they cannot rightly be adjudged to be the mechanical equivalent of that device. Machine No. 6 need not therefore be further considered.

Conceding, without deciding, that complainant's patent is entitled to a wide range of equivalents, the range must not be so broad as to include all other mechanisms and devices for making by machinery a woven wire fence fabric like that made by complainant's machine.

In Gill v. Wells, 22 Wall. 1–15, 22 L. Ed. 699, the rule for equivalents in patents for a combination is stated as follows:

"Old ingredients known at the date of letters patent granted for an invention, consisting of a new combination of old ingredients, if also known at that date as a proper substitute for one or more of the ingredients of the invention secured by the letters patent, are the equivalents of the corresponding ingredients of the patented combination. Such old ingredients, so known at the date of the letters patent granted, are the equivalents of the ingredients of the patented combination, and no others, and it may be added that that, and that only, is what is meant by the rule that inventors of a new combination of old ingredients are as much entitled to claim equivalents as any other class of inventors."

There is no evidence upon this hearing that a device like either the hopper of defendant's machine No. 5, or the automatic hand of its machine No. 6, was, at the time of the Bates patent, known as a proper substitute for the stay wire feed or cutting mechanism of the Bates machine, or that either could then have been used for that purpose in the same or any other relation to the other parts of the machine. On the contrary, the evidence is conclusive that neither was then so known and cannot now be so used.

In the former suit it was urged with great force that the claims of the Bates patent were so broad as to include any and every other means of making such a fence by machinery, and that the claims therefore were invalid under the rule held in O'Reilley v. Morse, 15 How. 62, 112, 113, 14 L. Ed. 601, and subsequent case. This contention was not sustained because the specifications and drawings of the Bates patent specifically describe, and the claims distinctly call for, a particular machine made up of certain elements combined and co-operating in a certain manner to produce a woven wire mesh fence, but that the claims were not so broad as to prevent the use of other machines, substantially different, for making the same kind of a fence. If complainant's contention is now correct, that defendant's machines Nos. 3, 4, 5, and 6 infringe the coiling, cutting, and stay wire feed mechanisms of the Bates patent, then the holding in the former suit was wrong, for if the coiling mechanism of defendant's machines Nos. 3 and 4, the method of preparing the stay wire sections for, and placing them in, machine No. 5, and the "automatic hand" of machine No. 6 are not each substantially different in its construction and mode of operation from those of the Bates machine, it would seem to be impossible to make a machine that is substantially different from the ma-

chine of the Bates patent, and the claims would therefore be so broad as to include any and every device for making a woven wire fence fabric by machinery. Such a construction of the claims of the Bates patent would render it invalid. It is the right of the defendant or of any one else to construct a machine substantially different from that of the complainant's patent with which to make the same kind of a fence that the machine of that patent makes, and the fact that Denning in constructing such a machine endeavored to avoid infringing the Bates machine, is to be commended rather than condemned. The conclusion, therefore, is that the charge of infringement is not sustained by the proofs submitted.

Upon the argument at the bar it was conceded by counsel for both parties that all the facts were as fully and accurately shown by the preliminary proofs as they could be upon final hearing, and that the motion for a preliminary injunction might well be considered and determined upon the merits regardless of any technical grounds that might be deemed sufficient to defeat the same. The question has therefore been considered as upon the merits and at much greater length than ordinarily would have been done in considering a motion for a temporary injunction. No stipulation, however, was made or filed that the matter might be considered and determined as upon final hearing, and the only order that can now be made is one denying the preliminary injunction; and it is accordingly so ordered only.