WESTINGHOUSE ELECTRIC & MFG. CO. v. CONDIT ELECTRICAL MFG. CO.

(Circuit Court, S. D. New York.  January 7, 1908.)

No. 1.

1. PATENTS—SUIT FOR INFRINGEMENT—PREVIOUS DECISIONS—EFFECT.

Upon the question of the validity or construction of a patent, the judge of a Circuit Court is not bound by a decision of a Circuit Court of Appeals of another circuit, but it is his duty to exercise an independent judgment, giving to such decision the weight to which, in his opinion, its reasoning entitles it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 481-488.]

2. SAME—INFRINGEMENT—CIRCUIT BREAKER.

The Wright and Aalborg patent, No. 633,772, for an automatic circuit breaker, while an improvement patent in which none of the elements of the device are broadly new, covers a new combination which produces better results and discloses invention, claims 2 and 5, construed, and held infringed.

3. SAME—IMPROVEMENT PATENTS.

In the field of improvement each patentee must stand on the specific improvement disclosed in and covered by his claims, and improvements subsequently made by another, though in the same field of improvement, do not infringe unless the changes are colorable merely, and consist of the substitution of well-known equivalents, or mere changes of form or interchange of parts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 379.]

4. SAME—EQUIVALENTS—SUBSTITUTION OF SPRING FOR PIVOT.

A spring substituted for a pivot in a patented combination where it permits the same movement and does the same work is an equivalent, and the substitution does not avoid infringement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 374, 375.]

In Equity. Bill of complaint alleging infringement by defendant of claims 2 and 5 of U. S. letters patent to Gilbert Wright and Christian Aalborg, for "Automatic Circuit Breaker," No. 633,772, dated September 26, 1899, application filed March 23, 1899.

Kerr, Page & Cooper (Thomas B. Kerr, of counsel), for complainant.

Clifton V. Edwards (Edward P. Payson, of counsel), for defendant.

RAY, District Judge.   The patentees in the specifications of the patent say:

"Our invention relates to devices employed for automatically opening electric circuits upon the passage therethrough of a current materially in excess of that which the circuit is intended to carry. The object of our invention is to provide a circuit-breaker that shall have a large current-carrying capacity in proportion to the mechanical dimensions of the device, which shall be easily brought into operative position and locked therein, which shall be certainly and quickly opened whenever the current in the circuit exceeds that for which the locking mechanism is set, and which shall serve to interrupt the circuit without danger of injury to the main contact-terminals. The means for accomplishing these results are disclosed in the accompanying drawings, and will now be described."

Claims 2 and 5, in suit, read as follows:

"In an automatic electric-circuit breaker, the combination with a base and stationary main and shunt contact-terminals located in approximately vertical alignment thereon, of a movable laminated contact member pivoted to said base, a movable shunt-contact member pivoted to said laminated contact member, toggle-levers for operating said movable members, means for locking the breaker in closed position, and a tripping device projecting into a magnetic circuit."

"(5) In a circuit-breaker, the combination with main stationary contact-terminals and a stationary shunt-terminal located above the same, of a pivoted main contact member, a shunt-contact member pivoted to said main member at a distance from its axis of movement, means for yieldingly holding the movable shunt-contact in a position in advance of the plane of the faces of the main movable member when in open position, toggle-lever mechanism for closing the breaker, a latch and electromagnetically-actuated means for tripping the latch, said toggle-lever, latching and tripping mechanism being located below both the main and the shunt separable terminals."

The complainant alleges infringement by defendant in the use, etc., of a circuit breaker illustrated in complainant's record on the sheets opposite page 25.   Defendant denies infringement, and avers in his answer that the patent in suit is invalid by reason of prior use and lack of invention in view of the prior art, or, if valid, it is to be so narrowly construed as not to cover defendant's device.

Claim 2 has, in combination in a circuit breaker, the following elements: (1) A base and stationary main and shunt contact-terminals located in approximately vertical alignment thereon; (2) a movable laminated contact member pivoted to said base; (3) a movable shunt-contact member pivoted to said laminated contact member; (4) toggle-levers for operating said movable members; (5) means for locking the breaker in closed position; and (6) a tripping device projecting into a magnetic circuit.

Claim 5 has, in combination in a circuit breaker, the following elements: (1) (a) Main stationary contact terminals and (b) a stationary shunt-terminal located above the same; (2) a pivoted main contact member; (3) a shunt-contact member pivoted to said main member at a distance from its axis of movement; (4) means for yield-

159 F.—10

ingly holding the movable shunt-contact in a position in advance of the plane of the faces of the main movable member when in open position; (5) toggle-lever mechanism for closing the breaker; (6) (a) a latch and electromagnetically-actuated means for tripping the latch and (b) said toggle-lever, latching and tripping mechanism being located below both the main and the shunt separable terminals.

In closing their description of their invention the patentees say, "We desire it to be understood that one invention is not limited to any specific form or arrangement of parts except in so far as such limitations are specified in the claims." Hence it is not otherwise limited, except by specific language or by the prior art.

This patent has been the subject of litigation in the Third Circuit. Westinghouse Electric & Mfg. Co. v. Cutter Electrical & Mfg. Co.; 143 Fed. 966, 75 C. C. A. 152, reversing the Circuit Court (Holland, D. J.) in 136 Fed. 217. On a full hearing as to the validity of the claims of the patent here in suit Judge Holland held, in substance, that:

"The Wright and Aalborg patent, No. 633,772, for an automatic electric breaker, is limited by the prior art to a single new element in the combination shown. As so construed, held not infringed."

Judge Holland said:

"In the second claim it will be noticed 'a movable shunt contact member' is 'pivoted to the laminated contact member' and in the fifth claim 'a shunt contact member' is 'pivoted to a main contact member' and this is the only new matter the patent contains."

He meant, I take it, that this was the only new matter distinguishing it from the prior art. He refers to the file wrapper in the Patent Office, and says:

"The complainant is therefore estopped from asserting any broader claim than that to which he agreed with the Patent Office."

He asserts that the original claims were rejected on Packard, Larson, and Potter, and then amended by the insertion of the new matter above quoted from Judge Holland's opinion, and, as amended, allowed. He also states:

"The defendant's device contains the same nine old elements found in the Potter, the Larson, and the Packard patents, and the patent in suit, but it is different in arrangement from any of them, in that the early contact and delayed break is effected by two movable shunt terminals, which, when brought together in closing, tilt on their respective pivots so that the faces can adjust themselves in a close fit, the one sliding on the other for some distance, each one of them having a resilient mounting, so that when they are opened they both spring in somewhat different positions from those which they occupy when closed."

He then concludes that as defendant's device secures the early closing and delayed break "by a shifting movement of both the shunt terminal and piece," while the complainant accomplishes the same result "through a stationary shunt terminal and a moving shunt piece actuated by a long arm pivoted to the main contact member near the toggle joint," there was no infringement. He did not deny the validity of the claims in suit, but simply held that in view of the

limited or narrow construction which must be placed upon the claims the defendant did not infringe. The Circuit Court of Appeals, Third Circuit, Acheson and Dallas concurring, Gray dissenting, held the patent valid and infringed. The Circuit Court of Appeals, among other things, said:

"We are not able to give to the claims 2 and 5 the limited meaning contended for by the defendant. Certainly nothing is expressed to restrict these claims to a pivoting at the point B. The language used is satisfied by the pivoting of the shunt-contact member at a point, A, and the shunt-contact member cannot be said any more truly to be pivoted to the laminated contact member or main member by a pivotal connection at B, than by a pivotal connection at A. Moreover, we think it clearly appears that the pivotal connection at A is essential to the practical operation of the patented apparatus, and therefore the construction of the claims 2 and 5 should be such as to include this indispensable feature. The function of the movable carbon block is not simply the adjustment of contact between the carbons 17 and 5, but also to permit the main contact to close after the carbon contacts are closed, and to open before the carbon contacts are opened. Furthermore, the interpretation on which the defendant insists brings into claims 2 and 5 as an element the pivoted arm, 20, which is expressly made an element of claims 1 and 3, but which was omitted from claims 2 and 5, and presumably was intentionally so omitted.

"Turning to the defendant's circuit-breaker, we find that the movable carbon block (15) is pivoted directly to an arm forming an upward extension of the main movable laminated contact member. The defendant, however, insists that it has wholly dispensed with the pivoted connection of the long arm, 20, of the patent in suit with the laminated contact member, and thus has eliminated from its structure the loose and yielding connection at point B. Is this so? As we have seen, the movable laminated contact member of the defendant's apparatus is pivoted to the base, and the pivot, 6, it is shown, moves in a slot, 7, thereby affording loose motion to the laminated contact member independent of the motion of the carbon shunts. Now, in answer to the question, 'Will you please state the functions of the slot marked "7" in your cut A of the defendant's circuit-breaker?' the defendant's expert replied: 'The function of the slot marked "7" in the cut A is to permit a motion of translation of the pivot, 6. This permits a motion of translation of the laminated member, 4, before its simple motion of rotation about pivot, 6, during the opening of the switch.' And the witness further states that: 'In closing defendant's circuit-breaker the carbons come first into engagement, and then, by a motion of translation, permitted by the slot, 7, the main laminated member and the movable carbon move together toward their respective complementary contacts; after the carbons have once touched in the closing movement they continue in engagement.' Obviously the two devices for securing loose motion to the laminated contact member independent of the motion of the carbon shunts are equivalent mechanical arrangements."

That court also said:

"Upon the whole case we are of opinion that there is substantial identity of operation between the complainant's and the defendant's devices, accomplished by substantially the same means, and securing the same results. We think, therefore, that the court below should have entered a decree in favor of the complainant upon the second and fifth claims of the patent in suit. We have not overlooked the argument based upon the contents of the file wrapper. We are not able, however, to find anything therein inconsistent with the interpretation which we have given to claims 2 and 5 of the patent in suit. Claim 2 stands as originally formulated, save by the insertion of the word 'located' after 'terminals,' and the word 'approximately' before 'vertical alignment.' Claim 5 was not amended so as to include the long arm, 20, or with reference to it at all. The changes made in that claim do not touch the controlling questions before the court."

It is contended by the complainant that as this was the decision of a Circuit Court of Appeals, even though in another circuit, that the Circuit Court of the Second Circuit should deem itself bound by it, and cites decisions and the rules of comity. I do not regard this court as bound at all except as it is convinced by the reasoning of the opinions in the two cases. Circuit Judge Gray and District Judge Holland hold the one way, while Circuit Judges Acheson and Dallas hold the other. I think this court should look to the record, the reasoning, and the law rather than to the high degree of that court for guidance. The judge at circuit is bound by the decisions of the Circuit Court of Appeals in his own circuit so far as such decision relates to the questions before that court for decision and decided by it. He is not bound by the obiter holdings of his own Circuit Court of Appeals. When he comes to the decisions of the Circuit Courts of Appeals in other circuits he is not bound at all. Should he so regard himself he would find himself in a predicament, for such courts quite frequently decide the same question on the same facts in direct opposition to each other. What is his duty in such a case? Shall he, for comity sake, "hedge?" Shall he be bound by the one Circuit Court of Appeals and thereby run the risk of offending the other when they differ, as frequently they do, or shall he exercise his own best judgment and simply follow the one whose reasoning and judgment is most convincing? It seems to me very clear that the judge at circuit, as an independent judicial officer, is bound to think and act for himself, exercising his best judgment, giving to the holdings of Circuit Courts of Appeal, outside his own circuit, all the weight their reasoning is entitled to. When he does this he does his duty, when he fails he becomes a mere machine. In all cases the judge at circuit must follow the Supreme Court of the United States as it is the final arbiter, and its decisions are the law of the land binding on all. Hence I have carefully examined the opinions in the cases referred to and the record in the case now before this court. In the record here I find no file wrapper. A large number of prior patents are in evidence, and show the prior art as explained by defendant's witness Louis Bell. He states that Wright and Aalborg, in the patent in suit, have designed an automatic circuit breaker along the same general lines as their switch of patent No. 633,771, "with the addition of a shunt contact arm pivoted to the main contact member and reaching above it make contact with a fixed carbon block in such wise that the carbon shunt contact would be the last to break as this circuit breaker was opened and the first to close when it was closed." He divides complainant's claims into eight elements, and then says:

"These elements are all individually old in the art, and they are collectively old in at least three patents prior to the patent in suit."

He specifies these as Larson, No. 522,527; Potter, No. 533,083; and Packard, No. 577,447. He also says:

"The only element of claims 2 and 5 of the patent in suit which distinguishes them from these prior combinations is the pivoting of the shunt contact-piece to the main contact member in such wise as to close the shunt before the main contact and open it after the main contact."

William Main, a witness for the complainant, takes up Bell's analysis of the claims in suit and demonstrates, I think, that Bell has omitted important and vital words, as, for instance, Bell describes element 1 of claim 2 as "a base carrying two main terminals" and "a fixed shunt terminal," dividing it into two elements. The patent calls for "a base and stationary main and shunt contact terminals located in approximately vertical alignment thereon." His third element is thus stated by him, "a movable bridge piece to close the main circuit." The patent calls for "a movable laminated contact member pivoted to said base." His fourth element is "a movable shunt member to close the shunt circuit." The patent calls for "a movable shunt contact member pivoted to said laminated contact member." Now, going to claim 5 Bell gives as the fifth element, for he combines the claims, "Means for opening and closing the shunt circuit so that it should open after and close before the main circuit," whereas the fifth claim calls for "Means for yieldingly holding the movable shunt contact in a position in advance of the plane of the faces of the main movable member when in open position." I will not go further, but it seems to me that these omissions and changes are very important. We are dealing with a device which has to do with electricity, the power of which is so tremendous as to be appalling, and one purpose of which is to prevent accidents and destruction. It is unnecessary to go into details of its purpose. In such a device as a "circuit breaker" of which many have been devised, as the art shows, every element of the claims as there particularly described becomes important. While the patentees were not pioneers in this art, they were improvers in an art which demanded improvement, and in which every real improvement was hailed with satisfaction. The control of the electric current and devices therefor is an art as yet in its infancy, probably. It seems to me that the force of the evidence of defendant's expert is broken by the ease with which he seems to have passed over some important matters and differences. However, probably he had no intention to slight the consideration of any question he thought important, or to evade the discussion of any element he deemed important. The complainant does not claim that any element of either combination is broadly new. He does claim a new and an improved combination producing far better results. He has the presumption of patentable invention in view of the prior art. Considering the importance of the art and the great interest therein it is improbable that anything was overlooked in the Patent Office. I am convinced that patentable invention is disclosed, and in that agree with the Circuit Court of Appeals in the Third Circuit.

When an invention has been extensively introduced and has met with success and large sales we have, sometimes, from this fact alone, persuasive evidence of patentable invention. It is sufficient to turn the scale as the courts have frequently decided. Here, we have evidence of this character of a most substantial nature. When a device of this kind has been made and covered broadly by a patent or patents, and no new element is introduced, and no old element is discarded in the new combination alleged to be an improvement, in other words, when we have but a new combination of old elements, a substantial advance in the art must be shown, and we must have in the new combination ei-

ther a new or a better result as well as a new mode of operation, or we must have a mode of operation answering in obedience to another law of mechanical movement. This field of improvement is open to all comers, and each comer must stand on the specific improvement disclosed in and covered by his claims. He cannot claim anything he has not specified in the claims of his patent. And the improvements subsequently made by another, which he has not described and claimed, even in the same field of improvement, do not infringe unless they are colorable merely, and consist of the substitution of well-known equivalents or a mere change of form or interchange of parts. If they operate in the same way and produce the same results and contain the same elements then such alleged improvements would not be patentable, and the devices would of course infringe. The mere change of position of the several elements, if they still operate on the same principle and in obedience to the same law of mechanical movement, would not constitute a new, a patentable, or a noninfringing improvement, or a noninfringing device. In determining whether or not there is infringement it is always important and necessary to ascertain the scope of the patent sued upon and alleged to be infringed. To do this intelligently we must consult the prior art as well as the terms of the patent itself. If the claims of the patent sued upon differ from the prior art, then we ascertain what this new combination does, and how it does it, to what extent is it an advance in the art, etc. Next, what are the elements of the alleged infringing device, what does it do, and how does it do its work? If the alleged infringing device has the same elements in substantially the same combination, doing substantially the same work in substantially the same way and producing the same results, we find infringement of course, assuming it was not made prior to the patented combination. It would not matter that each element was changed in form, or that some material had been substituted unless such substitution itself could be dignified as showing patentable invention. In applying the law of equivalents we are to act with caution, as in the field of mere improvement the rules are very strict. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Kokomo F. M. Co. v. Kitselman, 189 U. S. 8, 24, 23 Sup. Ct. 521, 47 L. Ed. 689; Cimiotti U. Co. v. American F. R. Co., 198 U. S. 399, 414, 25 Sup. Ct. 697, 49 L. Ed. 1100; Computing Scale Co., etc., v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645.

We will inquire, then, whether there are differences in means and operation between complainant's "automatic circuit breaker" and the one used by defendant. And, first, what does defendant's breaker do, how does it do its work, and what are the means employed? It is not necessary to go all through in detail, but only to call attention to the differences claimed by defendant. Defendant says in its brief:

"Broadly, no doubt, defendant's device is the equivalent, broadly, of Wright and Aalborg's—if that patent were a pioneer or the first for circuit breakers. But it is only for a late and specific form of breaker, and here the law is that an equivalent must not only accomplish the same purpose, but must accomplish it in the same way."

I understand the law to be that where a party is entitled to the benefit of the doctrine of equivalents it is not essential that the equiva-

lent do the same work in precisely the same way. It is only necessary that it accomplish the same result in substantially the same way. As, for instance, a pivot is something on which another thing may turn, or move up and down, or sidewise. If a spring, which permits the same movement, be substituted, and it does the same work, permits the same movement, is it not the equivalent of the pivot? Is not the one the well-known equivalent of the other? Can noninfringement be predicated on the use of a spring, used to do the same work in the same place with the same instrumentalities, in place of a pivot? In Imhaeuser v. Buerk, 101 U. S. 647, at pages 655, 656, 25 L. Ed. 945, the court, per Clifford, J., said:

"Equivalents may be claimed by a patentee of an invention consisting of a combination of old elements or ingredients, as well as of any other valid patented improvement, provided the arrangement of the parts composing the invention is new, and will produce a new and useful result. Such a patentee may doubtless invoke the doctrine of equivalents as against an infringer of the patent; but the term 'equivalent,' as applied to such an invention, is special in its signification, and somewhat different from what is meant when the term is applied to an invention consisting of a new device or an entirely new machine. Pressure in a machine may be produced by a spring or by a weight; and, where that is so, the one is a mechanical equivalent of the other. Cases arise, also, where a rod and an endless chain will produce the same effect in a machine; and, where that is so, the constructor in operating under the patent may substitute the one for the other, and still claim the protection which the patent confers. Exactly the same function in certain cases may be accomplished by a lever or by a screw; and, where that is so, the substitution of the one for the other cannot be regarded as invention. Patentees of an invention consisting merely of a combination of old ingredients are entitled to equivalents, by which is meant that the patent in respect to each of the respective ingredients comprising the invention covers every other ingredient which, in the same arrangement of the parts, will perform the same function, if it was well known as a proper substitute for the one described in the specification at the date of the patent. Hence it follows that a party who merely substitutes another old ingredient for one of the ingredients of the patented combination is an infringer if the substitute performs the same function as the ingredient for which it is so substituted, and it appears that it was well known at the date of the patent that it was adaptable to that use. Gill v. Wells, 22 Wall. 1, 28, 22 L. Ed. 699."

I think it clear that a spring is as much of an equivalent for a pivot as is a rod for an endless chain, or a spring for a weight. The question is, do they produce the same effect, perform the same function? See language quoted. Here Prof. Main testifies to the equivalency of the pivot and spring, and gives references.

The defendant describes the complainant's device thus:

"Arms 20 are themselves pivoted to a bifurcated frame, 11, which again is pivoted to base-brackets, 8 at 12, and carries 'rigidly fastened' to itself the laminated main movable terminal 9; and arms 20 also project downward and are attached to spring 23, which is pulled taut, in the operation of closing the main contacts, by lugs, 24, on casting 16 (connecting with a toggle-lever) so as to keep the carbon shunt block 17 at the end of arm 20 pushed forward into operative relation with the fixed carbon."

Defendant then says:

"In defendant's apparatus we find substantially the bifurcated frame 11 and the laminated main terminal mounted, but flexibly, thereon. But pivoted arm 20, carbon holder 18 pivoted to pivoted arm 20, spring 21 with its stop and spring 23 acting on one end of arm 20 from lug 24 on handle are all absent.

In place thereof defendant has a flat, angled spring rigidly attached to bifurcated frame 11, and carrying rigidly attached to itself a carbon block. This flat spring is constructed with two angles to insure the carbon making contact before and leaving contact after the main laminated terminal. That is the protective purpose of all movable shunt contacts in circuit breakers."

Comparing the two devices we find that this amounts to an admission that defendant has substituted a spring or spring arrangement, not novel, for pivots to do the same work, in the same way, at the same place, and to accomplish the same result. I think the question resolves itself into the inquiry whether the complainant's claims, read with the specifications, and in view of the prior art, are so specific and limited as to preclude the application of the doctrine of equivalents, as to allow this substitution by defendant of this equivalent without infringing. Of course, in substituting an equivalent there must be changes of construction and form, more or less, in unimportant details. Hence, in describing the two devices, the words used may indicate much greater differences than really exist. In reading specifications as well as in reading claims we are to get at the essence of the matter. If the complainant is to be strictly held to a "movable contact member" actually "pivoted to said base" by a pin "a movable shunt-contact member" actually "pivoted to said laminated contact member," by a pin or "a pivoted contact member, a shunt-contact member" actually "pivoted to said main member at a distance from its axis of movement," and the words "means for yieldingly holding the movable shunt-contact in a position in advance of the plane of the faces of the main movable member when in open position" are limited to the precise means shown and described, so that the complainant is not entitled to any range of equivalents whatever, notwithstanding the statement of the patent, "we desire it to be understood that our invention is not limited to any specific form or arrangement of parts except in so far as such limitations are specified in the claims," then defendant may not infringe. But, having in mind the state of the prior art and the words used, I do not so understand the rights of the parties. I fail to find anything in the prior art that precludes complainant from invoking the doctrine of equivalents in the respects just noted. Defendant's circuit breaker answers literally the terms of the claims in suit, except that the movable shunt carbon is mounted on a spring arm which extends upward from the laminated contact member instead of being actually pivoted to a rigid arm extending up from the laminated contact member. The function of the movable carbon in complainant's breaker is to adjust the contact between the stationary and the movable carbons, and to allow the main contact to close after and open before the carbon contacts are opened. This is clear and beyond all question. This is the sole function of defendant's spring mounted carbon. In defendant's device, the axis of motion of the movable carbon 15 is not confined to the line of the pin of the pivot, as in complainant's device, but is distributed along the spring arm. This, however, is immaterial, for, as stated, the function is the same, and the mode of operation of this part of the device is substantially the same. This, the proofs show, was the mechanical equivalent of complainant's pivot and known to be such at the date of the patent. Re-

ferring to defendant's device and claim 2 of the patent in suit Mr. Bean, complainant's witness, says:

"Regarding the mounting of the movable shunt carbon upon the spring in defendant's circuit breaker, as a mechanical as well as a functional equivalent of the construction set forth in claim 2 of the patent in suit, and therefore the same as far as this claim is concerned, I find in defendant's circuit breaker the combination with the base and stationary main and shunt contact terminals located in approximately vertical alignment thereon, of a movable laminated contact member pivoted to said base, a movable shunt contact member pivoted to said laminated contact member, toggle-levers for operating said movable members, means for locking the breaker in a closed position and a tripping device projecting into the magnetic circuit, substantially as described in claim 2."

And referring to claim 5 the same witness says:

"Regarding the mounting of the movable shunt carbon upon a spring, and the holding of the stationary shunt member forward of the plane of the main contact surfaces to compensate for the mounting of the movable shunt contact member back of the plane of the faces of the laminated members, as a mechanical as well as a functional equivalent of the construction set forth in claim 5, I find in this circuit breaker the combination with main stationary contact terminals and a stationary shunt terminal located above the same, of a pivoted main contact member, a shunt contact member pivoted to said member at a distance from its axis of movement, means for yieldingly holding the movable shunt contact in a position in advance of the plane of the faces of the main movable member when in open position, toggle-lever mechanism for closing the breaker, a latch and electromagnetically-actuated means for tripping the latch, said toggle-lever, latching and tripping mechanism being located below both the main and the shunt separable terminals, substantially as described in claim 5 of the patent."

Prof. Main, another expert, says:

"In the apparatus of the patent in suit, the shunt contact is described as pivotally-mounted and spring-pressed, so as to throw the movable shunt contact angularly in advance of the main movable contact, so far certainly as its function was concerned, so that in closing the breaker the shunt contacts would engage first and the main contacts later while the reverse would take place in the opening of the circuit. This involved a slight swinging of the movable shunt contact in reference to any radius which might be considered as connecting the main movable contact with its axis or pivot, while at the same time there was a bending of a spring or equivalent yielding means of holding the movable shunt contact to an advanced position so as to make the earlier and later engagements described during the closing and opening movements. It is obvious that the spring-mounting of the carbon shunt block to be found in defendant's apparatus effects precisely the same result. In many forms of mechanism a spring-mounting pure and simple is frequently adopted in place of the spring-pressed pivotal mounting or vice versa, the selection of one or the other form of mounting being a matter of judgment with the artisan."

In Winans v. Denmead, 15 How. 343, 14 L. Ed. 717, we find the following:

"When form and substance are inseparable, it is enough to look at the form only. Where they are separable, where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention—for that which entitled the inventor to his patent, and which the patent was designed to secure; where that is found, there is an infringement, and it is not a defense that it is embodied in a form not described and in terms claimed by the patentee."

Authorities are numerous to the same effect. I think they apply here, and are decisive of this case. The opinion of Judge Holland admits, in the language quoted, that defendant's device differs from the prior art both in arrangement of elements and in operation. The complainant's patent does this same thing, and was one of the advances made and patented to Wright and Aalborg. Then defendant came in and by substituting an equivalent did the same thing Wright and Aalborg had done, and were protected in doing by their patent. Defendant cannot escape the charge of infringement on this ground as we have seen. Defendant's device is not differentiated from complainant's by the mere substitution of a well-known equivalent. The result is that the patent, as to claims 2 and 5, is valid and infringed by defendant, and there will be a decree accordingly.