**LEE BLACKSMITH, INC., an Illinois Corporation, Plaintiff-Appellee,**

v.

**LINDSAY BROTHERS, INC., a Wisconsin Corporation, Defendant-Appellant.**

**No. 79–1038.**

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1979.

Decided Aug. 21, 1979.

James C. Wood, Chicago, Ill., for defendant-appellant.

Edward B. Holt, Rockford, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and PELL, Circuit Judges.

SWYGERT, Circuit Judge.

This case concerns the validity of U.S. Patent No. 3,991,831 (Foster) covering the invention of a harrow used in cultivating ground for agriculture purposes. Lee Blacksmith, Inc. ("Blacksmith"), the owner of the patent brought this action against Lindsay Brothers, Inc. ("Lindsay") for inducing infringement. Lindsay counterclaimed alleging invalidity of the patent under 35 U.S.C. § 102(b) ("on sale" bar) and 35 U.S.C. § 103 (obviousness). The district court held the Foster patent valid and found Lindsay liable for infringement. We

reverse. Without reaching the section 102(b) issue, we hold the Foster patent invalid for obviousness under section 103.

## I

The Foster patent has one claim. The invention described in this claim is the combination of a harrow and a post-plowing cultivating implement, such as a disc harrow (parent implement). The harrow is attached rigidly to the frame of the parent implement by one or more support beams. As illustrated by Diagrams 1 and 2 below, an arm is pivotally connected to and depends on each beam for movement toward and away from the parent implement. An elongated rail is attached to the lower end of the arms and extends laterally therefrom so that it is parallel to the rearmost row of the soil-working parts of the parent implement. A series of spaced, parallel metal rods (teeth), attached to the rail, slant downwardly and toward one end of the rail and form an acute angle with the rail. The teeth are spaced six inches apart and the length of the teeth is such that the lower end of each tooth projects under the upper end of an adjacent tooth. An adjustable spring connected between the frame of the parent implement and the pivotal arms of the harrow urges the teeth into the ground, with the teeth usually being tilted back at an angle of about forty-five degrees.

The alleged unique feature of the Foster patent is the acute angle of the tooth to the rail and the spacing of the teeth so that the lower end of each tooth projects under the upper end of an adjacent tooth. In its findings of fact the district court stated that this construction of a harrow produces a synergistic effect in that "all, or effectively all of the earth traversed by the harrow . . . is engaged by a tooth . . . ."

## II

When a patent's validity is challenged, the patent is presumed to be valid and the burden of establishing invalidity rests on the party asserting it. 35 U.S.C. § 282. The presumption of validity, however, does not exist against prior art which

was not considered by the Patent Office when the patent was issued. *Allen Group v. Nu-Star, Inc.,* 575 F.2d 146 (7th Cir. 1974) (*per curiam*). Lindsay produced before the district court two patents not cited: Sigmund U.S. Patent No. 3,574,320 and Hotchkiss Patent No. 3,090,448, and, relying on *Allen Group, supra,* contended that the presumption of validity should not apply to the patent in suit. But the district court found that the prior art relied upon by Lindsay was the same or no better than that considered by the patent examiner in issuing the patent.[1]

■ The district court's findings will not be set aside unless clearly erroneous.[2] The presumption of validity continues when the patent examiner has considered "equivalent references" to the prior art relied upon by the party claiming invalidity. *Laser Alignment, Inc. v. Woodruff & Sons, Inc.,* 491 F.2d 866, 871 (7th Cir. 1974). Thus for the purposes of determining obviousness on this appeal, the Foster patent will be presumed valid.

35 U.S.C. § 103 provides:

A patent may not be obtained . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

In *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court outlined the proper analysis to be followed when obviousness is at issue.

While the ultimate question of patent validity is one of law [citation omitted], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.

*Id.* at 17, 86 S.Ct. at 694. "[T]he *Graham* analysis [is] the exclusive means by which to measure nonobviousness under section 103." *Republic Industries, Inc. v. Schlage Lock Co.,* 592 F.2d 963 (7th Cir. 1979).[3]

In its findings the district court stated that Lindsay did not offer "evidence of any kind on the level of ordinary skill at any time in any art of farm earth-working equipment." The district court then concluded that because Lindsay had failed to establish evidence on one of the factual inquiries as required by *Graham,* the defendant had not overcome the presumption of validity. The district court's conclusion would be correct if *Graham* required that in every case the level of skill in the pertinent

---

1. Decision and Orders, Findings of Fact, p. 5, reads:

   17. The harrow disclosed by Sigmund is one and the same "clodbuster" harrow shown in the Noble brochure which was before the Examiner.

   18. The harrow of Hotchkiss is a drag in that it engages the earth only by virtue of its own weight, and in that respect it is no different from the harrow shown in Adix 839,-800. Hotchkiss does make provision of a harrow in combination with a post-plowing cultivating implement and does make provision for lifting the harrow to a transport position, but Vigen 3,500,936 makes the same provision. Both Adix and Vigen were considered by the Examiner.

      *    *    *    *    *    *

   20. The prior art presented to the court at trial is no better in function, or more material

or relevant to the invention claimed by the Foster patent in suit, than the prior art considered by the Patent Office.

2. There is some doubt as to whether the district court finding of fact ¶ 20 is correct. The court determined that the Noble brochure which was before the patent examiner was equivalent to the Sigmund patent. The brochure did not specify the length or the spacing of the teeth on the rail. Because we believe that the obviousness issue controls whether the patent is presumed valid, we find it unnecessary to consider this problem in detail.

3. The district court's conclusion that the Foster patent produces a synergistic effect is irrelevant when making a determination of obviousness. *See Republic Industries, supra.*

art must be resolved. This reading of *Graham* is overbroad.

■ The district court incorrectly relied on *Universal Athletic Sales Co. v. American Gym,* 546 F.2d 530 (3d Cir. 1976), in reaching its conclusion. In *Universal* the Third Circuit held that a district court could not invalidate a patent when the record was deficient with respect to evidence on the level of skill. But this rule is not without exception.

■ The correct rule was formulated by this court in *Research Corp. v. Nasco Industries, Inc.,* 501 F.2d 358 (7th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974). In *Research Corp.* a patent was held obvious on a motion for summary judgment. No evidence had been heard on the level of skill in the pertinent art. The court stated:

> Here there was no factual dispute concerning the state of the prior art, as recorded in the Taylor article. The differences between the method there disclosed and the claimed invention are plainly discernible from the documents, . . . A full trial, for the sole purpose of hearing expert testimony on the level of ordinary skill in the art, could not have aided the court in resolving the legal question of obviousness, and the court could properly rule on that issue "without the taking of testimony from experts in the pertinent area of knowledge." (citation omitted) *Id.* at 361.

The court further held that this method of determining obviousness was appropriate

> . . . where the structure and mode of operation of the accused device may be readily comprehended by the court and compared with the invention described and claimed in the patent without need of technical explanation by expert witnesses. (citation omitted) *Id.* at 362.

The gist of our holding in that case is that if the differences between the patent in suit and the prior art are such that the subject matter as a whole is obvious to a layman, a determination of the level of skill on the basis of expert testimony in the pertinent art would be useless. What is obvious to a layman would certainly be obvious to one skilled in the art to which the subject matter pertains.

### III

Having delineated the proper standard for evaluating obviousness, we turn to the question of the instant patent's validity.

The Sigmund patent, U.S. Patent No. 3,574,320, is pertinent prior art relating to the Foster patent. The district court said as much when it found that the Sigmund patent was the "one and the same" harrow contained in a brochure which was before the patent examiner. On the Sigmund harrow, the teeth are attached to the rail at a ninety degree angle and are spring-urged toward the ground, much like the Foster harrow. The specifications of the Sigmund patent provide that the rail to which the teeth are attached "is disposed at a 45 degree angle with respect to the direction of travel. . . . [This] insures that the teeth will slice through the plow furrows at a 45 degree angle instead of paralleling a continuous unbroken furrow [resulting] in a more efficient and effective mulching of the soil." Plaintiff's Exhibit 7. The Foster harrow which Blacksmith manufactures is constructed with the teeth at a forty-five degree angle to the rail. As can be seen from Diagram 3 the teeth plow through the ground at a forty-five degree angle with respect to the direction of travel in both the Sigmund and Foster harrows. Although it cannot be seen from the diagram, the teeth on both harrows are also tilted up from the ground at approximately a forty-five degree angle (*see* Diagram 2). Thus the teeth in Sigmund and Foster are in the ground in precisely the same attitude.

Further, the Foster patent provides that the teeth be spaced six inches apart and that the lower end of each tooth is beneath the upper end of an adjacent tooth. When

the teeth are pulled through the soil at a forty-five degree angle, each tooth disturbs a swath of ground wider than the tooth itself. Overlapping the teeth, *i. e.,* placing the bottom of one tooth below the top of another, ensures that all of the ground between any two teeth is thoroughly mulched. This characteristic is merely a function of the length and spacing of the teeth. It is substantially met by the Sigmund patent where it is stated:

> It is also preferred that the teeth be spaced apart on 5½ inch centers. . .
> It is also preferred that the teeth extend approximately 12 inches below the lower flange of the [rail]. Plaintiff's Exhibit 7.

These specifications in conjunction with the fact that the rail is carried at a forty-five degree angle to the direction of travel ensures that all of the ground is disturbed by a harrow constructed in accordance with the Sigmund design as it is by the Foster harrow. With respect to the direction of travel (*see* Diagram 3), the bottom of each Sigmund tooth is "below" the upper end of an adjacent tooth.

Thus the Foster patent was designed in a way which achieves the identical results of the Sigmund patent. The teeth of the harrow are the only working parts which affect the soil. In Sigmund and Foster the rails are in different positions with respect to the direction of travel, but the teeth are always in the same position relative to the ground. Attaching the teeth to the rail at a forty-five degree angle and then adjusting the position of the rail are differences from the Sigmund structure that can only be characterized as obvious. No expert testimony from one skilled in the art of harrowing and mulching tillable ground was needed in the trial to prove this fact.

■ The argument does not end here. It is Blacksmith's position that when the Foster harrow is turned twenty degrees from the direction of travel, it can be used behind a disc harrow, as well as a field cultivator. Blacksmith argues that the Foster harrow still disturbs all or effectively all of the soil when turned twenty degrees whereas the Sigmund harrow cannot be used effectively at this angle. Although this feature may be true, it cannot be found in the Foster patent. "[T]he claims of a patent limit the invention" and ". . . claims are to be construed in light of the specifications." *United States v. Adams,* 383 U.S. 39, 48–49, 86 S.Ct. 708, 713, 15 L.Ed.2d 572 (1966). *See also Laser Alignment, Inc. v. Woodruff & Sons, Inc.,* 491 F.2d 866, 872 (7th Cir. 1974) (claims of a patent are the measure of its grant). The patentability of the Foster invention cannot be based on a feature which is not articulated in the patent's claim.

■ Finally, Blacksmith argues that we should weigh secondary considerations such as commercial success, unexpected and beneficial results, and imitations. *See Graham, supra,* 383 U.S. at 17–18, 86 S.Ct. 684. Although these considerations may be "indicia of obviousness or nonobviousness," *id.* at 18, 86 S.Ct. 684, they may be weighed "[o]nly in a close case, in which application of the primary criteria of nonobviousness under section 103 does not produce a firm conclusion . . . ." *Republic Industries, supra.* Here the application of section 103's criteria creates no doubt about a determination that the Foster patent is invalid for obviousness.

The judgment of the district court is reversed.

Diagram 1

Diagram 2

Diagram 3

Direction of travel

PELL, Circuit Judge, dissenting.

The majority opinion demonstrates that a federal judge with long experience in the patent law field had no particular difficulty in finding that the Foster patented invention was obvious in view of prior art. The record here, on the other hand, demonstrates that that ease of perception was not shared by some ten of the plaintiff's competitors who imitated and were inspired by the plaintiff's patented harrow. I fail to see why these competitors who were in the same business could not be characterized as being persons of ordinary skill in the relevant art. I regard the fact of imitation as developed in this case as being a strong indicia of nonobviousness sufficient, and when coupled with the presumption of validity, sufficient to require affirmance of the judgment of the district court. Accordingly, I respectfully dissent.

In the majority opinion the matter of imitations is swept under the rug along with commercial success and unexpected and beneficial results. Aspects such as these are characterized in numerous judicial opinions as "secondary considerations." The majority opinion is breaking no new ground in adopting this characterization. It does appear to me that in relegating some of these aspects, which perhaps are secondary in time at least, the courts have minimized their probative value reflecting upon whether there is obviousness. I must concede that some of the trappings which have been judicially developed on the "secondary considerations" syndrome are probably so firmly entrenched that a realistic reevaluation can now only be forthcoming from the Supreme Court.

While I regard the matter of imitating a patented article by numerous competitors as being direct and positive evidence of nonobviousness, not to be relegated to a secondary consideration which only comes into play in close cases, I also recognize the breadth of language in the cases dealing with these so-called secondary considerations, including cases in this court in which I have either been the author of the opinion or a member of the panel which handed down the opinion. *Panduit Corp. v. Burndy Corp.*, 517 F.2d 535, 541 (7th Cir. 1975), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304; *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963 (7th Cir. 1979).

The landmark case on the evaluation of obviousness under section 103 is, of course, *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). After referring to the three conditions which must be satisfied, which standards are adverted to in the majority opinion, the Court states:

> Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

383 U.S. at 17–18, 86 S.Ct. at 694. I do not read *Graham* as stating that all secondary circumstances only have relevancy when the case is close as to obviousness. Further, the only reason that I can conceive that an

inquiry might have relevancy for the purpose of throwing light on the circumstances surrounding the origin of the subject matter sought to be patented would be the reflective one of whether as a matter of law there was obviousness. If there was not this reflective aspect there should appear to be no relevancy. I must confess also to having difficulty in determining the precise meaning of "indicia." I can only assume that this must refer to some probative evidentiary value even though, dependent upon its nature, it may be given little weight, particularly if the nexus of the so-called "secondary consideration" to the invention is weak. I would not construe *Graham,* however, as mandating a disregard of any pertinent probative evidence on the question of obviousness.

Other cases, indeed earlier cases, without referring to the aspects under consideration as secondary have dealt with the present issue. Thus in *Jungersen v. Ostby & Barton Co.,* 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235 (1949), the Court held that the fact that the patented process had enjoyed considerable commercial success did not render it valid. The Court then stated that it is true that in cases where the question of patentable invention is a close one, such success has weight in tipping the scales of judgment toward patentability. In the case before the Court, however, invention was plainly lacking and commercial success could not fill the void. In the case before this court I cannot agree with the majority opinion that invention is plainly lacking. Also I do not concede that all of the so-called secondary considerations are of equal stature as to probative value. Commercial success, of course, may be achieved by diligent huckstering and in that event would have no bearing whatsoever on the question of obviousness.

In a case a year later, *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162 (1950), the lower courts had both leaned heavily on evidence that the device filled a long-felt want and had enjoyed commercial success. The Court then opined that commercial success without invention would not make patentability. The Court did not expressly deal with "long-felt want" but I think a proper reading of the opinion would indicate that where there was nothing, as was true in that case, except combining well known elements in the prior art obviousness must be found to exist even though there was long-felt want. Unfortunately, the Court ignored the fact that patentable inventions have been properly upheld which combined old elements in the prior art where the combining would not have been obvious to those skilled in the art.

Again, in *Anderson's-Black Rock v. Pavement Salvage Co. Inc.,* 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), the Court reiterated that matters such as long-felt want and commercial success will not make patentability "without invention," citing *Great Atlantic & Pacific Tea Co, supra.*

In this dissent I will leave aside any reliance on commercial success, although that was ample in the present case, and long-felt need, even though with regard to this latter aspect I confess difficulty in not giving more significance than recent cases in this court and other courts have to the evidence of long-felt and unsolved want throughout an industry having skill in the art which for long times has been unable to solve a problem. I have the difficulty of discerning how something could be obvious to those of ordinary skill in the art if in the industry where those people labor the want was felt and those people could not solve it. In any event my reliance here is on the matter of imitation as to which I cannot find that the Supreme Court has dealt expressly, although in the much earlier case of *Diamond Rubber Co. v. Consolidated Rubber Tire Co.,* 220 U.S. 428, 441, 31 S.Ct. 444, 55 L.Ed. 527 (1911), the Court did remark on the fact that prior art was crowded with numerous prototypes and predecessors but yet while giving the tribute of praise to the prior art, the competitor gave the patented tire, "the tribute of its imitation as others have done."

In two cases at least in this court the importance of imitation by competitors has been found to be significant. In *Ekstrom-Carlson & Co. v. Onsrud Machine Works*, 298 F.2d 765, 770 (7th Cir. 1962), *cert. denied,* 369 U.S. 886, 82 S.Ct. 1160, 8 L.Ed.2d 287, this court, after referring to the well established rule of law that when a novel combination of elements whether all new, or all old, or partly new and partly old, so cooperate as to produce a new and useful result or a substantial increase in efficiency such combination is patentable, stated:

> When we add to the foregoing rule on combinations the fact that the disclosures of the patent in suit first solved the long existing problem facing the aircraft industry, the acceptance of the patented device by the industry and *defendant's imitation of plaintiff's machine,* the defense of obviousness must fall. (Emphasis added).

Also, in *Welsh Co. v. Chernivsky,* 342 F.2d 586, 591 (7th Cir. 1965), *cert. denied,* 382 U.S. 842, 86 S.Ct. 68, 15 L.Ed.2d 83, this court agreed with the district court's conclusion that the commercial success achieved by the patented object with only modest promotion and the fact that still another competitor had copied it in virtually every detail, while not sufficient of itself to establish the validity of the patent, did support the inference that the device was unobvious and filled a need.

The principal error, as I regard it in the majority opinion in the present case, is that the court declines to give any weight whatsoever to the aspect of imitation. The district court in its findings of fact expressly found the fact that Chromalloy and another competitor imitated and were inspired by plaintiff's patented harrow and the fact that other competitors followed in those same footsteps manifests that the claimed invention would not have been obvious to a person of ordinary skill in the art to which the subject matter of the patent pertains. The fact before we reach the legal question of obviousness that there was imitation not only by Chromalloy but by numerous other competitors is not challenged as being erroneous. Looking particularly at the Chromalloy situation, that company heard about the plaintiff's harrow from some of its salesmen in the field, and then conducted an extensive poll of its salesmen. From the poll and volunteered remarks of its salesmen Chromalloy heard opinions that plaintiff's harrow "was the machine of the future" and that Chromalloy should "either procure one or build one." Shortly after the poll Chromalloy personnel visited plaintiff, took photographs of plaintiff's harrow, sketched it, measured its components and recorded the measurements on the sketch. The photographs and sketches were in the possession of Chromalloy's engineering department when the drawings for the Chromalloy harrow were made, and the district court found that that harrow incorporated the invention of the Foster patent.

In the few cases dealing with the matter of imitation as bearing on obviousness there apparently was one or two at the most who had copied the patented invention. Here at least nine other competitors followed in the plaintiff's footsteps.

In sum, I fail to see how we can determine that a case is not a close one or that an invention is clearly obvious without considering what I regard as the most relevant evidence in the case. I think it is time that the courts relook at the question of relegating perhaps the most direct and positive evidence of nonobviousness to second class status.[1]

---

1. With regard to the issue raised by the counterclaim of invalidity under 35 U.S.C. § 102(b) ("on sale" bar) I agree with the district court's finding that there was no public use.